**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION, | ) ) ) |
| Plaintiff, | ) ) ) ) |
| v. | ) ) |
| BANK OF AMERICA, N.A. | ) Civil Action No. 17-36 (EGS) ) **REDACTED** ) |
| Defendant. | ) ) |

### MEMORANDUM OPINION

## I. Introduction

Every quarter, insured banking institutions make payments, known as "assessments," into the Deposit Insurance Fund ("Fund"), which insures depositors' accounts up to $250,000. Pursuant to the Federal Deposit Insurance Act ("FDIA" or "Act"), see 12 U.S.C. § 1817, the Federal Deposit Insurance Corporation ("FDIC") created a "risk-based" system to calculate each institution's assessment based on that institution's self-reported, quarterly data. The FDIC alleges that defendant Bank of America, N.A. ("BANA") improperly reported its quarterly data, thereby underpaying for deposit insurance. According to the FDIC, BANA owes $1.12 billion in deposit insurance assessments, which it refuses to pay.

The FDIC's amended complaint alleges that (1) BANA failed to pay mandatory assessments in violation of the FDIA; and (2) BANA was unjustly enriched when it received deposit insurance without fully paying for it. BANA counterclaimed, challenging the FDIC's regulations, which purportedly set out the method by which regulated institutions must calculate and report their quarterly data. BANA argues that the regulations violate the Administrative Procedure Act, 5 U.S.C. § 500 *et seq.*, and are contrary to the FDIA. Pending before the Court is BANA's motion to dismiss the FDIC's amended complaint in part or strike in part. *See* Def.'s Mot., ECF No. 13.[1] After careful consideration of the motion, the response, the reply thereto, and the applicable law, BANA's motion to dismiss or strike the FDIC's amended complaint in part is **DENIED**.

## II. Background

The FDIC is a "government corporation and instrumentality of the United States." Am. Compl., ECF No. 10 ¶ 16. It examines and supervises almost 3,800 commercial banks and savings institutions for operational safety and soundness. *Id.* It also administers the Fund, which provides deposit insurance to over 5,000 banks and savings institutions, insuring accounts of up to

---

[1] When citing electronic filings throughout this opinion, the Court cites to the ECF page number, not the page number of the filed document.

$250,000 per depositor. *Id.* ¶¶ 2, 16. If an institution fails, the FDIC ensures that the depositors are able to access their insured accounts at that institution; if the institution's assets are insufficient to return all insured deposits, the FDIC pays the balance from the Fund. *Id.* ¶ 21.

As required by the FDIA, the FDIC finances the Fund with assessments collected from FDIC-insured institutions. *Id.* ¶ 24. To determine the amount that each institution must pay, the FDIC utilizes a "risk-based" assessment system. *Id.* The system calculates each assessment rate based on that institution's "risk profile." *Id.* The risk profile captures the probability that the institution will fail and, in the event of failure, the potential amount of loss that the Fund will bear. *Id.* To determine each institution's risk profile, the FDIC implemented a "regulatory regime" that requires certain institutions to self-report specific data via quarterly "Call Report[s]." *Id.* ¶¶ 29, 32. This data, which includes the amount that the institution has lent to other entities, is intended to capture the risk of failure.[2] *Id.* ¶¶ 30-39. Because BANA is one of the

---

[2] Given the early stage of this litigation and the fact that the arguments addressed in this Memorandum Opinion relate to the parties' legal arguments regarding the sufficiency of the complaint, the Court does not set forth the details of the complex underlying regulatory scheme.

3

largest insured institutions, it is subject to the FDIC's assessment system and must report its quarterly data. *Id.* ¶ 25.

The FDIC alleges that, from the second quarter of 2011[3] through the fourth quarter of 2014, BANA improperly reported its quarterly data, thereby understating its risk profile. Am. Compl., ECF No. 10 ¶ 43. As a result, the FDIC underbilled BANA for deposit insurance. Had BANA properly reported its data, it allegedly would have owed the FDIC an additional $1.12 billion in assessment payments. *Id.* ¶¶ 48, 60. According to the FDIC, BANA knew how to properly report its data but "decided not to [do so]." *Id.* ¶¶ 57-59. Instead, it "certified as true and correct," pursuant to the FDIA, every Call Report at issue. *Id.* ¶ 68 (referring to 12 U.S.C. § 1817(a)(3)). The FDIC purportedly did not "learn[] the full extent of [BANA's] reporting failure" until 2016. *Id.* ¶ 9. The FDIC thereafter invoiced BANA for the $1.12 billion it allegedly owes. *Id.* ¶¶ 11, 65. BANA purportedly refuses to pay. *Id.* ¶ 12.

On January 9, 2017, the FDIC sued BANA for $542 million for failing to pay its mandatory assessments from the second quarter of 2013 through the fourth quarter of 2014. *See* Compl, ECF No.

---

[3] The FDIC concedes that BANA does not owe assessments for the second, third, and fourth quarters of 2011. In its amended complaint, it seeks underpaid assessments from the first quarter of 2012 through the fourth quarter of 2014. Am. Compl., ECF No. 10 ¶ 43.

1. On April 7, 2017, the FDIC amended its complaint, adding a claim for unjust enrichment. *See* Am. Compl., ECF No. 10 ¶¶ 72-94. The amended complaint alleges that BANA owes the FDIC an additional $583 million for underpayments predating the second quarter of 2013. *Id.* The FDIC requests that the Court order BANA to pay the full amount it owes, including interest, costs, and disgorgement of profits unjustly earned. *Id.* ¶ 22. On May 5, 2017, BANA filed a motion to dismiss or strike the FDIC's amended complaint in part for failure to state a claim for relief pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* Def.'s Mot., ECF No. 13.

## III. Standard of Review

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations and citations omitted).

Despite this liberal pleading standard, to survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible

on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)
(internal quotations and citations omitted). A claim is facially
plausible when the facts pled in the complaint allow the court
to "draw the reasonable inference that the defendant is liable
for the misconduct alleged." *Id.* The standard does not amount to
a "probability requirement," but it does require more than a
"sheer possibility that a defendant has acted unlawfully." *Id.*

   "[W]hen ruling on a defendant's motion to dismiss [pursuant
to Rule 12(b)(6)], a judge must accept as true all of the
factual allegations contained in the complaint." *Atherton v.
D.C. Office of the Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009)
(internal quotations and citations omitted). In addition, the
court must give the plaintiff the "benefit of all inferences
that can be derived from the facts alleged." *Kowal v. MCI
Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). Even so,
"[t]hreadbare recitals of the elements of a cause of action,
supported by mere conclusory statements" are not sufficient to
state a claim. *Iqbal*, 556 U.S. at 678.

**IV. Analysis**

   BANA moves to dismiss or strike in part the FDIC's amended
complaint for failure to state a claim. *See* Def.'s Mot., ECF No.
13. It makes three arguments: (1) the FDIC's unjust enrichment
claim should be dismissed because the FDIA provides the FDIC
with an adequate legal remedy; (2) the FDIC's unjust enrichment

claim should be dismissed because the FDIC did not allege unjust

enrichment as a matter of law; and (3) the FDIC's claims for

unpaid assessments predating the first quarter of 2013 should be

dismissed as time-barred. *See id.* at 6-7. The Court analyzes

each in turn.

## A. The FDIC is Permitted to Plead Alternative Theories of Liability at This Stage of Litigation

BANA argues that the FDIC's claim for unjust enrichment

must be dismissed because unjust enrichment, an equitable

remedy, is not available when a plaintiff has an adequate legal

remedy. Def.'s Mot., ECF No. 13 at 12-17. BANA argues that Count

I—the FDIC's FDIA claim for failure to pay mandatory assessments

pursuant to 12 U.S.C. § 1817(g)(1)—precludes the FDIC from

bringing Count II—its claim for unjust enrichment—because both

claims are "coterminous." *Id.* Put differently, BANA argues that

the claims cannot coexist because they seek the "very same

relief" for the same alleged behavior. *Id.*

The FDIC responds with several arguments: (1) its unjust

enrichment claim should survive because the FDIA explicitly

authorizes the FDIC to pursue common-law claims alongside its

statutory claim, *see* Pl.'s Opp'n, ECF No. 21 at 24-25 (citing 12

U.S.C. § 1817(h)); (2) it may plead both claims because Federal

Rule of Civil Procedure 8(d) permits alternative theories of

liability, *see id.* at 25-27; (3) its claims may proceed because

the Third Restatement of Restitution permits equitable claims notwithstanding an adequate legal remedy, *see id.* at 27-28; and (4) BANA's argument is irrelevant because the FDIC is not seeking equitable remedies, *see id.* at 29-32. Because the Court is persuaded that the FDIC may plead alternate theories of liability, it need not evaluate each of the FDIC's arguments.

Unjust enrichment is generally an equitable cause of action. *See, e.g.*, *Ga Dep't of Cmty. Health v. U.S. Dep't of Health & Human Servs.*, 79 F. Supp. 3d 269, 280-82 (D.D.C. 2015), *amended on other grounds by* 110 F. Supp. 3d 95 (D.D.C. 2015). Ordinarily, equitable remedies are not available when a plaintiff has an adequate legal remedy. *Terrace v. Thompson*, 263 U.S. 197, 214 (1923) ("[A] suit in equity does not lie where there is a plain adequate and complete remedy at law . . . ."). Such a proposition is "so well understood as not to require the citation of authorities." *Id.* That said, "[t]he mere existence of a remedy at law is not sufficient to warrant denial of equitable relief." *Ga. Dep't of Cmty. Health*, 79 F. Supp. 3d at 281 (citing *Council of & for the Blind of Delaware Cnty. Valley, Inc. v. Regan,* 709 F.2d 1521, 1550 n. 76 (D.C. Cir. 1983)). Instead, "[t]he legal remedy, both in respect to the final relief and the mode of obtaining it, must be 'as efficient as the remedy which equity would afford under the same circumstances.'" *Id.* (quoting *Regan,* 709 F.2d at 1550, n. 76).

The Court must therefore evaluate the plaintiff's remedies under the circumstances, a factual undertaking. *See id.*

Federal Rule of Civil Procedure 8(d)(2) authorizes a party to "set out [two] or more statements of a claim or defense alternatively or hypothetically, either in a single count . . . or in separate ones." Therefore, "[i]t is not generally a ground for dismissal of a complaint asserting equitable claims that the plaintiff has an adequate remedy at law." *In re G-Fees Antitrust Litig.*, 584 F. Supp. 2d 26, 46 (D.D.C. 2008)(quoting 1 Moore's Fed. Prac. § 2.03[2] (Matthew Bender 3d ed.)("Unjust enrichment is a common law equitable claim, available only where there is no adequate remedy at law. Rule 8, however, expressly permits pleading in the alternative . . ., even where [the plaintiff] appear[s] to have an adequate remedy at law."). Guided by that principle, courts in this Circuit have repeatedly denied motions to dismiss equitable claims, even when adequate legal remedies were available. *See United States v. First Choice Armor & Equip.*, 808 F. Supp. 2d 68, 77-78 (D.D.C. 2011) (declining to dismiss the government's unjust enrichment claim against certain defendants, despite the availability of a False Claims Act statutory claim, because "Rule 8(d)(2) allows a plaintiff to plead alternative theories of liability"); *United States v. Toyobo Co.*, 811 F. Supp. 2d 37, 52 (D.D.C. 2011) ("A plaintiff in an [False Claims Act] action may plead—if not ultimately

recover upon—alternative common law theories."); *United States ex rel. Purcell v. MWI Corp.*, 254 F. Supp. 2d 69, 79 (D.D.C. 2003)("Accordingly, at the motion-to-dismiss stage, courts in this district and elsewhere have permitted the government to proceed with claims alleging [statutory] violations as well as claims for unjust enrichment . . . ."). The Court finds this reasoning persuasive, and declines to adopt the reasoning of courts in other Circuits cited by BANA. Def.'s Reply Mot., ECF No. 25 at 10 n.1, 12.

Furthermore, the one case BANA cites from this Circuit is inapplicable at this stage. BANA points to *Georgia Department of Community Health v. U.S. Department of Health & Human Services*, in which Judge Kessler allowed the unjust enrichment claim to proceed, but "only after" determining that the plaintiff lacked an adequate legal remedy. Def.'s Reply Mot., ECF No. 25 at 10 (discussing 79 F. Supp. 3d at 281). True, Judge Kessler did examine whether the plaintiff had an adequate legal remedy, but was able to do so on summary judgment. *Ga. Dep't of Health*, 79 F. Supp. 3d at 281. Judge Kessler's determination that the plaintiff's legal remedy was not "as efficient as the remedy which equity would afford under the same circumstances," was necessarily factual. *Id.* (quoting *Regan,* 709 F.2d at 1550 n. 76). At this early stage, the Court is unable to evaluate the adequacy of the FDIC's legal remedy "in this situation." *See id.*

Finally, BANA argues that its case is distinguishable from the persuasive authority in this Circuit because the FDIC's legal remedy is "coterminous" with its unjust enrichment claim—meaning the unjust enrichment claim "turn[s] entirely on whether [BANA] violated the statute [FDIA] that provided the legal cause of action." Def.'s Reply, ECF No. 25 at 12. This argument is unavailing. In *United States ex rel. Purcell v. MWI Corporation*, the Court declined to dismiss the government's unjust enrichment claim even though the government may have had an adequate legal remedy via the False Claims Act. 254 F. Supp. 2d at 79. The government's unjust enrichment claim also turned—as BANA puts it— "entirely on" whether the defendants had violated the statute. *See id.* at 73-74; Def.'s Reply, ECF No. 25 at 12. Specifically, the government alleged: (1) the defendants had violated the False Claims Act by making false statements in order to obtain government payment; and (2) the defendants were unjustly enriched because they received those payments as a result of the same allegedly false statements. 254 F. Supp. 2d at 73-74. Notwithstanding the fact that the False Claims Act's remedies may have been "more than adequate," the Court allowed the plaintiff to plead alternative theories of liability at the motion-to-dismiss stage. *Id.* at 78-79. Therefore, the Court concludes that the FDIC may plead—if not ultimately recover upon—alternative common law theories.

**B. The FDIC Adequately Alleged an Unjust Enrichment Claim**

BANA also argues that the FDIC's unjust enrichment claim must be dismissed because the FDIC did not plead the first element of unjust enrichment: that the FDIC conferred a benefit upon BANA. Def.'s Mot., ECF No. 13 at 17-18. Rather, the FDIC alleged that BANA failed to pay its assessment fees, as was already legally required. *Id.* at 18. The FDIC contends that it sufficiently pled that BANA was unjustly enriched because it received a valuable benefit—deposit insurance—for which it underpaid. Pl.'s Opp'n, ECF No. 21 at 34-37.

To state a claim for unjust enrichment, a plaintiff must allege that: (1) the plaintiff conferred a benefit on the defendant; (2) the defendant retained that benefit; and (3) under the circumstances, the defendant's retention of the benefit was unjust. *News World Commc'ns, Inc. v. Thompsen*, 878 A.2d 1218, 1222 (D.C. 2005). As relevant here, the Court of Appeals for the District of Columbia Circuit ("D.C. Circuit") has interpreted the first element liberally, finding that a plaintiff "confers a benefit" upon a defendant if it "in any way adds to the other's security or advantage . . . [or] adds to the property or another . . . [or] saves the other from expense of loss." *Bregman v. Perles*, 747 F.3d 873, 878 (D.C. Cir. 2014) (quoting Restatement (First) of Restitution § 1 (1937)).

The FDIC plainly alleged that it provided BANA with a benefit, for which it underpaid. Am. Compl., ECF No. 10 ¶¶ 21-23. At the very least, it is plausible that deposit insurance is a "benefit," as contemplated by the D.C. Circuit. As the FDIC puts it: "[d]eposit insurance afford[s] [BANA] the benefit of being able to offer customers deposit accounts that are insured against loss in the event of failure." *Id.* ¶ 23. Accepting the FDIC's allegations as true, deposit insurance "allows [BANA] to attract new customers and keep existing ones . . . [and] helps [BANA] prevent a 'bank run,' during which a panic about [BANA's] solvency could lead to queues of people seeking to withdraw their money." *Id.* To that end, deposit insurance plausibly "adds to [BANA's] security" and "saves [BANA] from expense of loss." *Bregman*, 747 F.3d at 878. Moreover, the D.C. Circuit has recognized that "equitable principles are not confined by rigid formulas" and that a defendant can be "unjustly enrich[ed] . . . from paying too little." *Mitchell v. Riegel Textile, Inc.*, 259 F.2d ,954, 956 (D.C. Cir. 1958). The FDIC alleged that BANA "unjustly enriched itself at the expense of the FDIC" by paying too little for deposit insurance and "retaining [the] $1.12 billion that it owes the FDIC." Def.'s Mot., ECF No. 13 at 17-18 (quoting Am. Compl., ECF No. 10 ¶ 92).

BANA relies on *Rapaport v. U.S. Department of Treasury* for the proposition that a defendant is not unjustly enriched, as a

matter of law, when it merely fails to pay what it already owes. Def.'s Mot., ECF No. 13 at 18 (discussing 59 F.3d 212, 217-20 (D.C. Cir. 1995)). *Rapaport* is inapplicable. In that case, the government provided deposit insurance to a financial association on the condition that Rapaport, the majority shareholder of the association, provide a certain amount of capital. *Id.* at 213-214. When Rapaport failed to provide that capital, the association failed and the government sued him for unjust enrichment. *Id.* at 214, 217. The D.C. Circuit found that the government failed to establish the first element of unjust enrichment because the association—not Rapaport—received the benefit (deposit insurance). *Id.* at 217-18. At most, Rapaport received an "indirect benefit." *Id.* Unlike this case, however, the FDIC pled that BANA directly received a benefit—deposit insurance—and it underpaid for that benefit. *Id.* at 217-18; *see* Am. Compl., ECF No. 10 ¶¶ 21-23, 70-71.

**C. It is Premature to Strike the FDIC's Claims as Untimely**

**1. Count I: FDIA Claim**

BANA argues that the Court should dismiss or strike the FDIC's FDIA claim for the allegedly underpaid assessments from

the first[4] quarter of 2012 through the first quarter of 2013[5] as
time-barred under the FDIA's "straightforward three-year statute
of limitations." Def.'s Mot., ECF No. 13 at 19-21 (citing 12
U.S.C. § 1817(g)(2)). The FDIC contends that the claims should
not be dismissed because they are not conclusively time-barred
on the face of the complaint. Pl.'s Opp'n, ECF No. 21 at 37-45.
Instead, according to the FDIC, there are "contested questions
of fact" as to whether BANA's actions fall within the FDIA's
exception, which tolls the statute of limitations when a
defendant made a false or fraudulent statement with intent to
evade any assessment. *Id.* at 38; 12 U.S.C. § 1817(g)(2)(C).[6] BANA
argues that this exception is not applicable because the FDIC

---

[4] Throughout its motion, BANA argues that the Court should
dismiss the FDIC's claims starting at different quarters.
*Compare* Def.'s Mot., ECF No. 13 at 25 (arguing the Court should
dismiss the FDIC's claims for the "first quarter of 2012 through
the first quarter of 2013") *with id.* at 19 (arguing the Court
should dismiss the FDIC's claims for "the second quarter of 2012
through the first quarter of 2013"). The Court will assume that
BANA intends to strike the FDIC's claims starting the first
quarter of 2012. ███████████████████
████████████████████████████████████ Regardless, the starting
date does not change the Court's analysis.
[5] BANA concedes that the alleged underpayments for the second
quarter of 2013 through the fourth quarter of 2014 are subject
to a tolling agreement and are therefore not time-barred. Def.'s
Mot., ECF No. 13 at 20 n. 2.
[6] The FDIC also argues that it can change an invoice's "due date"
by submitting revised invoices. Pl.'s Opp'n, ECF No. 21 at 45-
50. Because the Court finds that the FDIC's claims are not
conclusively time-barred on the face of the complaint, it need
not evaluate this theory.

did not allege that BANA made a false or fraudulent statement with intent to evade its assessments in its complaint. Def.'s Mot., ECF No. 13 at 20-21.

Claims brought pursuant to the FDIA are subject to a three-year statute of limitations: "any action . . . to recover from an insured depository institution the underpaid amount of any assessment shall be brought within [three] years after the date the assessment was due." 12 U.S.C. § 1817(g)(2)(B). Payments are "due" about ninety days after the end of each quarter. *See* 12 C.F.R. § 327.3(b)(2)(listing the assessment due dates for each quarter). Pursuant the FDIA, there are two exceptions to the statute of limitations, one of which is relevant here: "If an insured depository institution has made a false of fraudulent statement with intent to evade any or all of its assessment," the FDIC "shall have until [three] years after the date of discovery of the false or fraudulent statement" to bring an action. 12 U.S.C. § 1817(g)(2)(C).

"[B]ecause statute of limitations issues often depend on contested questions of fact, dismissal is appropriate only if the complaint on its face is conclusively time-barred." *Bregman v. Perles,* 747 F.3d 873, 875-76 (D.C. Cir. 2014) (quoting *de Csepel v. Republic of Hungary,* 714 F.3d 591, 603 (D.C. Cir. 2013)). A Court should therefore "hesitate to dismiss a complaint on statute of limitations grounds" unless the

defendant has met its "heavy burden" to show that the complaint is time-barred and there is no dispute as to "when the limitations period began." *Feld Ent., Inc. v. Am. Soc'y for the Prevention of Cruelty to Animals*, 873 F. Supp. 2d 288, 308 (D.D.C. 2012) (quoting *DePippo v. Chertoff,* 453 F. Supp. 2d 30, 33 (D.D.C. 2006); *Turner v. Afro-American Newspaper Co.,* 572 F. Supp. 2d 71, 72 (D.D.C. 2008)).

Rather than establish that the complaint is conclusively time-barred, BANA argues that the FDIA's exception does not apply because the FDIC failed to allege that BANA made a false or fraudulent statement with intent to evade assessments. Def.'s Mot., ECF No. 13 at 20-21. The Court disagrees. A plaintiff does not need to plead facts in its complaint to respond to a potential affirmative defense. *Beach TV Props. v. Solomon*, 254 F. Supp. 3d 118, 133 (D.D.C. 2017). That a complaint is time-barred is an affirmative defense that defendant must prove. *See Firestone v. Firestone*, 76 F.3d 1205, 1210 (D.C. Cir. 1996)(noting that the fact that the plaintiff had pled fraudulent concealment does not "mean that a plaintiff must plead [an affirmative defense] in the complaint"). Therefore, the FDIC had no obligation to allege "with particularity" that BANA made false statements with the intent to evade assessment payments because the FDIC is not obligated to anticipate BANA's affirmative defenses. Def.'s Mot., ECF No. 13 at 21 (citing Fed.

R. Civ. P. 9(b)); *Firestone*, 76 F.3d at 1210; *see also Gomez v. Toledo*, 446 U.S. 635, 640 (1980) (finding there was "no basis for imposing on the plaintiff an obligation to anticipate [a qualified immunity defense] by stating in his complaint that the defendant acted in bad faith" because the defendant bears the burden to plead the affirmative defense). Applying this well-settled precedent, the Court concludes that barring the FDIC's claims at this stage is premature.

Furthermore, whether BANA made a false statement with intent to evade its assessments is a "contested question[] of fact," precluding dismissal at the pleadings stage. *Bregman*, 747 F.3d at 875-76. The Court finds that the FDIC has alleged facts sufficient to allow the reasonable inference that BANA acted with intent to evade assessments. Specifically, the FDIC alleges that BANA should have known how to properly report its data because the same compliance group was responsible for reporting both BANA's and its parent corporation's quarterly data. Am. Compl., ECF No. 10 ¶¶ 57-60. According to the FDIC, the parent company reported its data to a different regulating entity correctly, but BANA "decided not to" report its data to the FDIC the same way. *Id.* at ¶ 58 (emphasis added). ▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Finally, the FDIC pleads that BANA "certified as true and correct" its reporting,

"despite the fact that [it] did not [do so]." *Id.* at ¶ 68. All
three allegations, when taken as true, reasonably lead to the
inference that BANA deliberately underreported its risk data in
order to evade full assessment payments.

Likewise, assuming BANA did make a false statement with
intent to evade, BANA has not established that there is no
factual dispute as to "when the limitations period began." *Feld
Ent., Inc.*, 873 F. Supp. 2d at 308. To illustrate, the parties
dispute the date that the FDIC discovered any alleged false
statement. The FDIC argues that it did not discover BANA's
underpayments until 2016, while BANA argues that the FDIC was
aware of its reporting methodology as early as 2012. *Compare*
Def.'s Mot., ECF No. 13 at 21-22 n.3, *with* Am. Compl., ECF No.
10 ¶ 65.

### 2. Count II: Unjust Enrichment Claim

BANA argues that the Court should also dismiss the FDIC's
unjust enrichment claim for the same time period—the first
quarter of 2012 through the first quarter of 2013—because it is
also time-barred under a three-year limitations period pursuant
to District of Columbia ("D.C.") law. Def.'s Mot, ECF No. 13 at
22-24; Def.'s Reply, ECF No. 25 at 30-31. Alternatively, BANA
argues that the FDIA's three-year statute of limitations also
applies to the unjust enrichment claim because Section
1817(g)(2) "governs all 'actions *relating to* assessments.'"

Def.'s Mot., ECF No. 13 at 22 (quoting with emphasis 12 U.S.C. §
1817(g)(2)). In response, the FDIC argues that (1) its unjust
enrichment claim is timely under the FDIA because the previously
discussed exception applies; and (2) its claim is timely under
D.C. law because the statute of limitations does not begin to
run until a defendant wrongfully refuses to pay, and BANA did
not refuse to pay its assessments until March 2017. Pl.'s Opp'n,
ECF No. 21 at 51. Finally, the FDIC argues that federal law,
which provides for a six-year statute of limitations, applies to
its unjust enrichment claim. *Id.* at 50-51 (citing 28 U.S.C. §
2415(a)).

 The Court need not decide, at this stage of the proceedings,
which statute of limitations applies because BANA has not
established that the FDIC's claims would be conclusively time-
barred under any of these limitations periods.

 If the Court were to accept BANA's argument that it should
apply the FDIA's three-year statute of limitations, the
previously discussed factual dispute arises. *See supra* Sec.
IV(C)(i). Therefore, the Court cannot dismiss the relevant
alleged underpayments as time-barred because it is plausible
that BANA made a false statement with the intent to evade
assessment payments, tolling the statute of limitations. *See* 12
U.S.C. § 1217(g)(2)(C).

Likewise, were the Court to accept BANA's argument that the three-year statute of limitations pursuant to D.C. law governs, another factual dispute arises. Def.'s Reply, ECF No. 28 at 30-31. Under D.C. law, the three-year statute of limitations for unjust enrichment claims begins to run "only when the enrichment actually becomes unlawful, i.e., where there has been a wrongful act giving rise to a duty of restitution." *Bregman*, 747 F.3d at 876 (quoting *News World Commc'ns v. Thompsen*, 878 A.2d 1218, 1225 (D.C. 2005)("[T]he statute of limitations begins to run when the plaintiff's last service has been rendered and compensation has been wrongfully withheld.")). The FDIC argues that BANA only wrongfully withheld payment once the FDIC demanded it, which did not occur until after the FDIC discovered the alleged underpayments in 2016 or 2017. Am. Compl., ECF No. 10 ¶¶ 61-71. BANA argues that the FDIC knew that it had allegedly withheld payments as early as 2012. *See* Def.'s Mot., ECF No. 13 at 21-22 n.3. Thus, BANA necessarily argues that the Court should make a factual determination without the benefit of discovery. The Court cannot do so at this stage.

**V. Conclusion**

Accordingly, for the reasons set forth in this Memorandum Opinion, BANA's motion to dismiss or strike the FDIC's amended complaint in part is **DENIED**.

**SO ORDERED.**

**Signed:**     **Emmet G. Sullivan**
         **United States District Judge**
         **March 27, 2018**